UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BONNIE CARR,

       Plaintiff,

v.                                                 Case No:  8:12-cv-2238-T-23AEP

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,[1]

       Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Bonnie Carr seeks judicial review of the denial of her claim for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and he employed proper legal standards, the Court recommends that the decision be affirmed.

**I.**

**A.**    **Procedural Background**

Plaintiff filed an application for a period of disability and DIB on September 29, 2010, and an application for SSI on October 8, 2010. (Tr. 118-19, 120-29.) The Commissioner denied Plaintiff's claims both initially and upon reconsideration. (Tr. 51-54, 66-72, 76-79.) Plaintiff then requested an administrative hearing. (Tr. 81-82.) Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified. (Tr. 95-100.) Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security and should, therefore, be substituted for Commissioner Michael J. Astrue as Defendant in this action. *See* 42 U.S.C. 405(g); Fed. R. Civ. P. 25(d).

denied Plaintiff's claims for benefits. (Tr. 7-22.) Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied. (Tr. 1-6.) Plaintiff then timely filed a complaint with this Court. (Dkt. No. 1.) The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

### B.     Factual Background and the ALJ's Decision

Plaintiff, who was born on June 23, 1956, claimed disability beginning September 10, 2010. (Tr. 118, 120, 147.) Plaintiff attended school through the ninth grade and later obtained clerical and data entry vocational training. (Tr. 27, 159.) Her past relevant work experience included work as a telephone clerk. (Tr. 150, 159.) Plaintiff alleged disability due to panic attacks and seizures. (Tr. 158.) Additionally, Plaintiff also reported the conditions of hearing loss in the left ear, depression, and post-traumatic stress disorder. (Tr. 12, 26, 29, 181.)

After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: history of benign positional vertigo and history of seizure disorder. (Tr. 12, Finding 3.) Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 15, Finding 4.) The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform the full range of sedentary work. (Tr. 15, Finding 5.) In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not credible to the extent that they were inconsistent with the RFC. (Tr. 16.)

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined Plaintiff could perform her past relevant work as a telephone clerk. (Tr. 17, Finding 6.) Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled. (Tr. 18, Finding 7.)

**II.**

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. *Id.* §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. *Id.* §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and (4) considering the RFC assessment, whether the claimant can perform his or her past

relevant work.  If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience.  *Id.*  A claimant is entitled to benefits only if unable to perform other work.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g), 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See* 42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam).  Under the substantial evidence test, "findings of fact made by administrative agencies . . . may be reversed . . . only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings."  *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), *cert. denied*, 544 U.S. 1035 (2005) (citation omitted).  The Commissioner must apply the correct law and demonstrate that the Commissioner has done so.  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of witnesses.  *Grant v. Richardson*, 445

F.2d 656, 656 (5th Cir. 1971) (per curiam).[2]  Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963).  Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled.  *Miles*, 84 F.3d at 1400 (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Thus, the scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (per curiam); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

### III.

Plaintiff challenges the ALJ's decision on two grounds:

(1)  The ALJ erred in not finding Plaintiff's depression, post-traumatic stress disorder ("PTSD"), and panic disorder without agoraphobia to be severe; and

(2)  The ALJ erred in assigning little weight to the psychiatric impairment questionnaire prepared by an advanced registered nurse practitioner.

For the reasons that follow, none of these contentions warrant reversal.

**A.   Whether the ALJ properly considered Plaintiff's mental impairments nonsevere.**

Plaintiff first challenges the ALJ's findings at step two of the sequential evaluation process.  Plaintiff argues that the ALJ should have found the following impairments severe:

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.

5

depression, PTSD, and panic disorder without agoraphobia. (Dkt. No. 20 at 11.) Instead, the ALJ found that Plaintiff suffered from only the following severe impairments: history of benign positional vertigo and history of seizure disorder. (Tr. 12, Finding 3.) Plaintiff contends that the record clearly shows that she has been diagnosed with depression, PTSD, and panic disorder, and she also asserts that these impairments significantly limit her ability to perform basic, work-related functions. (Dkt. No. 20 at 12.) Further, Plaintiff claims that the ALJ's reasoning in not finding Plaintiff's mental impairments severe is not supported by substantial evidence. (Dkt. No. 20 at 15-20.) Because the ALJ complied with the step-two requirements and his decision was based on substantial evidence, the ALJ did not err.

At step two of the sequential evaluation process, a claimant must show that he or she suffers from an impairment or combination of impairments that significantly limits his or her physical and mental ability to do basic work activities for a consecutive twelve-month period, namely: walking, standing, sitting, pushing, reaching, seeing, hearing, speaking, understanding and carrying out of simple instructions, use of judgment, and responding appropriately in the workplace. *See* 20 C.F.R. §§ 404.1520, 404.1521. The finding of *any* severe impairment, whether or not it results from a single severe impairment or a combination or impairments that together qualify as severe, is enough to satisfy the requirements of step two. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987); *Lawson v. Astrue*, No. 5:09-cv-23-Oc-GRJ, 2009 WL 3617794, at *6 (M.D. Fla. Nov. 2, 2009); *see also Heatly v. Comm'r of Soc. Sec.*, 382 Fed. Appx. 823, 825 (11th Cir. 2010) (per curiam) ("Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe.").[3] A

---

[3]By its own terms, the evaluation at step two is a *de minimis* test intended to weed out the most minor of impairments. *See Yuckert*, 482 U.S. at 153-54; *Augusto v. Comm'r of Soc. Sec.*, No. 6:06-cv-1889-Orl-DAB, 2008 WL 186541, at *5 (M.D. Fla. Jan. 18, 2008) ("The 'severe' impairment threshold of step two is a de minimis hurdle . . . employed as an administrative convenience to screen out claims that are 'totally groundless' solely from a

claimant's impairment will be considered non-severe only if it is a slight abnormality that has such a minimal effect on the claimant that it would not be expected to interfere with the claimant's ability to work, irrespective of age, education, or work experience. *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986) (citing *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)). "In other words, the 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).[4]

Additionally, when evaluating the severity of a mental impairment at each level of the administrative review process, the adjudicator must follow "a special technique." 20 C.F.R. §§ 404.1520a(a), 416.920a(a). First, pertinent symptoms, signs, and laboratory findings are evaluated to determine whether a claimant has a medically determinable mental impairment(s). *Id.* §§ 404.1520a(b)(1), 416.920a(b)(1). Second, the adjudicator must evaluate the degree of functional limitation[5] resulting from the impairment(s), which requires

---

medical standpoint.") (quoting *Lane v. Astrue*, No. 3:06-CV-445, 2008 WL 53706, at *7 (E.D. Tenn. Jan. 3, 2008)).

[4]Further, according to Social Security Ruling 96-8p, "[i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" S.S.R. 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996). When the ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, the ALJ's failure to find additional severe impairments at step two does "not constitute reversible error." *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987); *see also McConnell v. Astrue*, No. 1:09-cv-00063-MP-WCS, 2009 WL 4405477, at *3 (N.D. Fla. Dec. 2, 2009) ("Even if there is error at step 2 . . . a remand is not needed if the error is harmless because the ALJ considered the limiting effects of the impairment at each succeeding step, along with other impairments." (citations omitted)).

[5]The degree of functional limitation means "the extent to which [a claimant's] impairment(s) interferes with [a claimant's] ability to function independently, appropriately, effectively, and *on a sustained basis*." 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2) (emphasis added). Under this analysis, the adjudicator will consider factors such as "the quality and level of [a claimant's] overall functional performance, any episodic limitations,

7

the adjudicator to consider all relevant evidence including "all relevant and available clinical signs and laboratory findings, the effects of [a claimant's] symptoms, and how [a claimant's] functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication, and other treatment." *Id.* §§ 404.1520a(c)(1), 416.920a(c)(1). The four broad functional areas to which a rating will be assigned by the adjudicator to articulate the degree of limitation are: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.[6] *Id.* §§ 404.1520a(c)(3), 404.920a(c)(3). Once the rating has been assigned to the four functional areas based on the functional limitations from a claimant's impairment(s), the adjudicator will determine the severity of the impairment(s). *Id.* §§ 404.1520a(d), 404.920a(d). Notably, if the rating given to the first three functional areas is either none or mild, and the rating given to the fourth area is none, generally, those findings support the conclusion that an impairment(s) is not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in [a claimant's] ability to do basic work activities." *Id.* §§ 404.1520a(d)(1), 404.920a(d)(1).

Here, the ALJ satisfied the requirements of step two by finding that Plaintiff suffered from several severe impairments. (Tr. 12.) As stated previously, the finding of any severe impairment is enough to satisfy the demands of step two. *Jamison*, 814 F.2d at 588; *Healty*, 382 Fed. Appx. at 824-25. And, though the ALJ did not find Plaintiff's mental impairments severe, he continued on in the sequential evaluation process and subsequently considered the purported limitations caused by Plaintiff's adjustment disorder with mixed anxiety and depressed mood, depression, and PTSD in determining the severity of Plaintiff's mental

---

the amount of supervision or assistance [a claimant] require[s], and the settings in which [a claimant is] able to function." *Id.*

[6]In the first three functional areas, the scale includes the following degrees: none; mild; moderate; marked; and extreme. 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). In the last functional area, episodes of decompensation, the scale includes the following degrees: none; one or two; three; and four or more. *Id.*

impairments and Plaintiff's RFC in accordance with 20 C.F.R. §§ 404.1520a, 416.920a, and Social Security Ruling 96-8p. (Tr. 13-17.)

Furthermore, in accordance with the regulations governing evaluation of whether a claimant's mental impairments are severe, the ALJ performed everything required of him in compliance with the special technique. *See* 20 C.F.R. §§ 404.1520a, 416.920a. Specifically, the ALJ found that Plaintiff's medically determinable impairments of adjustment disorder with mixed anxiety and depressed mood, depression, and PTSD do not cause more than a minimal limitation on Plaintiff's ability to perform basic, work-related activities. (Tr. 13-14.) In reaching this determination, the ALJ considered pertinent, objective medical evidence and opinions of record and concluded that Plaintiff had only mild limitations in activities of daily living, social functioning, or concentration, persistence, or pace, and no episodes of decompensation, which generally compels a finding of nonsevere under the regulations. *See* 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1). While the ALJ pointed out that the record contained evidence of Plaintiff's subjective complaints of depression, PTSD, and panic disorder and that Plaintiff received some treatment for these impairments, the ALJ found, based on the record as a whole, that Plaintiff's medical treatment for these impairments was not of the type to indicate that Plaintiff was severely functionally limited as to preclude Plaintiff from work. (Tr. 13-15.)

The ALJ highlighted several reasons for finding Plaintiff's mental impairments nonsevere. (Tr. 13-15.) First, the ALJ discussed the treatment records of Plaintiff's only treating psychiatrist, Dr. Karl Jones, who treated Plaintiff sporadically from October 2006 to April 2010. (Tr. 13, 243-54.) While Dr. Jones diagnosed Plaintiff with depression, PTSD, and anxiety, Dr. Jones's most recent records reflected that Plaintiff was oriented to time, person, place, and situation and that her behavior was unremarkable and she was cooperative.

9

(Tr. 243.)  Dr. Jones also noted that Plaintiff was coherent and logical and that her thought process was unremarkable.  (Tr. 243.)  Significantly, Dr. Jones's records did not provide any limitations on Plaintiff's ability to function, and, in fact, Dr. Jones opined that Plaintiff had a fair response to treatment.  (Tr. 243-54.)  Therefore, Plaintiff's only treating mental health physician of record did not indicate that her depression, anxiety, or PTSD caused more than a minimal limitation on her functioning, providing substantial evidence to support the ALJ's decision.

The ALJ also discussed the psychological examination performed by consultative, examining physician Dr. Linda Appenfeldt, who did not opine that Plaintiff's mental impairments were severe or that they significantly limited Plaintiff's ability to perform basic work activities.  (Tr. 13, 256-60.)  On November 30, 2010, Dr. Appenfeldt found Plaintiff alert, oriented to time, place, person, and situation, and capable of effective communication.  (Tr. 257.)  Dr. Appenfeldt also reported that Plaintiff sustained concentration, persistence, understanding, memory, and social interaction within normal limits during the course of the examination.  (Tr. 257.)  Dr. Appenfeldt stated in her report that Plaintiff appeared mildly anxious and depressed when discussing stressors, such as her health, finances, unemployment, and history of abuse.  (Tr. 258.)  But Dr. Appenfeldt concluded that Plaintiff's emotional and psychological prognosis was good provided she obtained the appropriate treatment.  (Tr. 258.)  Dr. Appendfeldt did not articulate any limitations caused by Plaintiff's mental impairments and she specifically noted that Plaintiff was able to perform work-related mental activities involving understanding, memory, sustained concentration and persistence, social interaction, and adaptation.[7]  (Tr. 259.)

---

[7]Plaintiff contends that the ALJ's discussion of Dr. Appenfeldt's opinion is insufficient because the ALJ does not state with specificity the portions of the opinion that support his finding that Plaintiff's metal impairments are not severe.  (Dkt. No. 20 at 17.)

Moreover, the ALJ accorded significant weight to the opinion of agency reviewing psychiatrist, Dr. Keith Bauer, who opined that Plaintiff's mental impairments were not severe based on her lack of recent mental health treatment,[8] Dr. Appenfeldt's evaluation, and the other record evidence of Plaintiff's normal mental health status.[9]  (Tr. 13, 276.)  The ALJ's findings are also supported by the opinion of agency examining physician Dr. Ndidi Madu, who performed Plaintiff's internal medicine examination.  (Tr. 293.)  Although Dr. Madu is not a mental health expert, he noted in his report that Plaintiff dressed appropriately, maintained good eye contact, and appeared oriented in all spheres.  (Tr. 293.)  Dr. Madu stated that his examination revealed no evidence of impaired judgment or significant memory

---

However, the ALJ summarized the conclusions of Dr. Appenfeldt's opinion which support his findings, and his findings are otherwise supported by substantial evidence.  (Tr. 13.) Consequently, Plaintiff's contention lacks merit.

[8] A lack of psychiatric treatment, including psychological treatment or mental health counseling, is indicative that a mental health impairment may not be as severe as alleged.  *See Abbott v. Colvin*, No. 3:12-cv-59-J-TEM., 2013 WL 847142, at *6 (M.D. Fla. Mar. 7, 2013) (stating that substantial evidence supported the ALJ's finding that plaintiff was not disabled even after finding severe mental impairments because despite being diagnosed with generalized anxiety disorder with isolated incidences of panic attacks, it was noted that plaintiff was treated conservatively with medication, there were no records of plaintiff seeking other mental health treatment, and medical records indicated plaintiff was mentally functional during the same time period and later).

[9] Plaintiff complains that the ALJ erred in giving significant, probative weight to the opinion of Dr. Bauer because Dr. Bauer did not have the opportunity to examine records from a treating psychiatrist at the time he rendered his opinion.  (Dkt. No. 20 at 17.)  Plaintiff's argument is without merit, however, because at the time Dr. Bauer rendered his opinion the only records from a treating psychiatrist were those from Dr. Jones, which covered the period of October 2006 to April 2010, prior to Plaintiff's alleged onset date.  (Tr. 288.) Nevertheless, the ALJ did not err in according Dr. Bauer's opinion great weight because his opinion was consistent with the medical evidence of record, including the opinion of Dr. Appenfeldt who examined Plaintiff after the alleged onset date.  *See Tipton v. Astrue*, 8:09-cv-1990-T-TGW, 2011 WL 164326, at*5, 8 (M.D. Fla. Jan. 19, 2011) (finding nothing inappropriate with respect to an ALJ's consideration of medical assessments made by physicians prior to the disability onset date where the ALJ supported a credibility finding with medical records prior to and after the alleged disability onset date).  Plaintiff contends that the psychiatric review questionnaire prepared by an advanced registered nurse practitioner, Judith Mattea, at Suncoast Center, Inc. ("Suncoast") conflicts with Dr. Bauer's opinion.  But, as discussed in further detail below, the ALJ properly accorded little weight to that opinion. Thus, it does not serve as a basis for the ALJ to reject Dr. Bauer's opinion.

impairment and that Plaintiff presented with a normal affect. (Tr. 293.) In sum, no treating, examining, or reviewing source assessed any restrictions or limitations on Plaintiff's basic mental work abilities. As such, substantial evidence supports the ALJ's finding that Plaintiff's mental impairments are not severe.

Plaintiff argues that the ALJ neglected to consider an event that occurred in October 2010 that caused Plaintiff's symptoms of depression, PTSD, and anxiety disorder to worsen. (Dkt. No. 20 at 18.) Because of this event, Plaintiff argues that the ALJ should not have discounted Plaintiff's subjective complaints of worsening symptoms, such as visual and auditory hallucinations, decreased sleep, lack of motivation, crying spells, and inability to get along with others. (Dkt. No. 20 at 18-20; Tr. 188-95.)

Although the ALJ must consider all of a claimant's symptoms, including pain, the ALJ may reject those subjective complaints that are inconsistent with the objective medical and other evidence.[10] *See* 20 C.F.R. §§ 404.1529, 416.929. Additionally, in social security disability cases, credibility determinations are within the sole province of the ALJ. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005). When the ALJ discredits the claimant's subjective testimony, however, the ALJ must articulate explicit and adequate reasons for doing so. *Wilson*, 284 F.3d at 1225; *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote,* 67 F.3d at 1562. As noted previously, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms but that her statements concerning the intensity, persistence, and

---

[10]"A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms[.]" 20 C.F.R. §§ 404.1508, 416.908 (citations omitted). "Signs are anatomical, physiological, or psychological abnormalities which can be observed, apart from [a claimant's] statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques." *Id.* §§ 404.1528(b), 416.928(b).

limiting effects of symptoms were not credible to the extent they were inconsistent with the limitations set forth by the ALJ's RFC assessment. (Tr. 16.)

In properly discrediting Plaintiff's subjective complaints, the ALJ cited objective medical evidence, such as the report of Dr. Appenfeldt, which was prepared after the alleged event that triggered worsening of Plaintiff's symptoms and which articulated none of the symptoms subsequently reported by Plaintiff. (Tr. 16.) The ALJ also highlighted the inconsistencies between the function report prepared by Plaintiff on October 21, 2010, (the "2010 function report") and the function report prepared by Plaintiff on January 13, 2011 (the "2011 function report"). (Tr. 16.) In the 2010 function report,[11] Plaintiff stated that she was capable of independently engaging in a wide variety of daily activities, including maintaining her personal hygiene, preparing simple meals, cleaning, and shopping. (Tr. 164-71.) Plaintiff reported that she watched television, read, sewed, cared for her dog, and played bingo. (Tr. 164-71.) She also stated that she spent time with her grandchildren every day. (Tr. 168.) In contrast, the January 2011 function report prepared by Plaintiff paints a very different picture of Plaintiff's capabilities in performing daily activities of life. (Tr. 188-95.) For example, Plaintiff reported that she no longer slept well, had difficulty preparing meals, cleaning, and doing laundry in a normal amount of time, and generally had difficulty feeling motivated. (Tr. 188-95.) Plaintiff also reported that she no longer spent time with others because she was too depressed and had difficulty getting along with others because she is easily upset and has panic attacks. (Tr. 193.) As a result of the inconsistencies between these two reports and the incompatibility of Plaintiff's subjective complaints as articulated in the 2011 function report with the objective medical evidence of record, the ALJ found the credibility of Plaintiff's

---

[11] Plaintiff claims that the triggering event that caused her mental health to deteriorate occurred sometime during October 2010; accordingly, it is unclear from the record whether the 2010 function report was prepared before or after that event.

subjective complaints lacking. (Tr. 16.) In making a credibility determination, the ALJ may consider whether any inconsistencies exist in the evidence and the extent to which any conflicts exist between a claimant's statements and the rest of the evidence. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). Accordingly, under the Regulations, the ALJ was permitted to consider such conflicting information in rendering a credibility determination. Thus, based on the objective medical evidence highlighted above and the inconsistencies between Plaintiff's function reports, the ALJ properly found Plaintiff's subjective complaints not entirely credible. The ALJ provided explicit and adequate reasons, each of which find support in the record, for discrediting Plaintiff's subjective complaints. As such, the ALJ did not err and his credibility determination is supported by substantial evidence.

Because the record evidence reasonably suggests that Plaintiff's depression, PTSD, and panic disorder were not as severe as Plaintiff alleged and the ALJ considered these impairments in formulating the Plaintiff's RFC, the ALJ's decision is supported by substantial evidence. Consequently, Plaintiff's first argument is without merit.

      **B.    Whether the ALJ incorrectly assigned little weight to the psychiatric impairment questionnaire prepared by Nurse Mattea.**

Next, Plaintiff contends that the ALJ did not accord proper weight to the psychiatric impairment questionnaire prepared by Judith Mattea, an advanced registered nurse practitioner, and endorsed by a supervising psychiatrist. (Dkt. No. 20 at 21-22.) Specifically, Plaintiff alleges that the ALJ failed to determine whether the questionnaire constituted an opinion from an acceptable medical source, and, therefore, the ALJ also erred in assigning little weight to the opinion. (Dkt. No. 20 at 22.) However, contrary to Plaintiff's assertion the ALJ determined that the questionnaire did not constitute an opinion from an acceptable medical source and, accordingly, properly assigned the questionnaire little weight as it was inconsistent with the evidence of record. (Tr. 13-14.) Thus, the ALJ did not err.

In assessing the medical evidence, the ALJ must state with particularity the weight afforded to different medical opinions and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Nevertheless, medical opinions may only come from acceptable medical sources.[12] *See* 20 C.F.R. §§ 404.1513(a), 416.913(a). Registered nurse practitioners, such as Nurse Mattea, are not classified as acceptable medical sources. *Id.* Instead, they are classified as an "other source," or a medical source who can provide additional evidence as to the severity of Plaintiff's impairments and how it affected Plaintiff's ability to work. *Id.* §§ 404.1513(d), 416.913(d). Therefore, the ALJ could consider Nurse Mattea's opinion as to the severity of Plaintiff's impairments and how it may have affected Plaintiff's ability to work, but the ALJ was not required to afford her opinion any significant weight. *See Wilver v. Astrue*, No. 8:07-CV-488-T-EAJ, 2008 WL 2824815, at *3 (M.D. Fla. July 21, 2008) ("A nurse practitioner's opinion is not afforded the same weight as a treating physician; rather it is only entitled to fair consideration.").

On October 5, 2011, Nurse Mattea at Suncoast prepared a psychiatric impairment questionnaire, which was later endorsed by supervising psychiatrist Dr. Linda Lefler. (Tr. 401-04.) As the questionnaire indicates, Nurse Mattea diagnosed Plaintiff with Major Depressive Disorder, severe with psychotic features, and PTSD. (Tr. 402.) The symptoms associated with Plaintiff's diagnoses included sleep disturbance, delusions or hallucinations, recurrent panic attacks, social withdrawal or isolation, intrusive recollections of a traumatic experience, and generalized persistent anxiety. (Tr. 402.) Additionally, Plaintiff complained of crying spells and sadness. (Tr. 402.) The questionnaire stated that Plaintiff's mood was depressed and anxious but that her thought process was organized and negative for

---

[12]Acceptable medical sources include licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. *See* 20 C.F.R. §§ 404.1513(a), 416.913(a).

distortions, delusions, obsessions, phobias, and suicidal or homicidal ideation. (Tr. 402.) Also, the questionnaire reported that Plaintiff's orientation and memory, attention and concentration, and insight and judgment were all intact. (Tr. 402.) The opinion indicated that Plaintiff's combined impairments would reasonably be expected to produce the subjective symptoms and functional limitations identified, that her impairments lasted or would be expected to last at least twelve months, and that she would be required to be absent from work about twice per month due to her impairments or treatment. (Tr. 403.) It was further found that Plaintiff had slight restrictions of activities of daily living, marked difficulties in maintaining social functioning, and no deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner but that insufficient evidence existed to determine whether Plaintiff had episodes of deterioration or decompensation in work or work-like settings that caused Plaintiff to withdraw from the situation or to experience exacerbation of signs and symptoms. (Tr. 403-04.) The questionnaire stated that Plaintiff was being treated using a combination of medication and that no side effects were reported. (Tr. 403.) Plaintiff's prognosis was guarded. (Tr. 403.)

In considering this opinion, the ALJ correctly noted that Nurse Mattea was not an acceptable medical source even though her opinion was countersigned by Dr. Lefler.[13] (Tr. 13-14.) Regardless, the ALJ correctly concluded that the opinion rendered in the questionnaire was inconsistent with the record evidence as a whole, and, accordingly, the ALJ accorded the opinion little weight. (Tr. 14.) Plaintiff complains that the ALJ did not specifically explain the deficiencies of Nurse Mattea's opinion. (Dkt. No. 20 at 22.) Nevertheless, while the ALJ "generally should explain the weight given to opinions from . . . 'other sources,'" the ALJ's determination is sufficient if "the discussion of the evidence in the

---

[13] The ALJ found the lack of examination by Dr. Lefler of particular import in according the questionnaire little weight. (Tr. 13-14.)

determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." S.S.R. 06-03p, 2006 WL 2329939, at *6 (S.S.A, Aug. 9, 2006). Here, Nurse Mattea's opinion conflicts with that of examining psychiatrist Dr. Appenfeldt and reviewing psychiatrist Dr. Bauer. As summarized in detail above, neither Dr. Appenfeldt nor Dr. Bauer opined that Plaintiff's mental impairments were severe or resulted in limitations that would preclude Plaintiff from performing work-related activities. (Tr. 256-59, 276-89.) Nurse Mattea's opinion also conflicts with Plaintiff's own account of her limitations as reflected in her 2010 function report, which the ALJ accorded more credibility than her 2011 function report.[14] (Tr. 14, 164-71, 188-95.)

Because Nurse Mattea's opinion did not qualify as an opinion from an acceptable medical source, the ALJ properly discounted her assessment in favor of opinions from acceptable medical sources. Further, in finding that Nurse Mattea's opinion was inconsistent with the objective medical and other record evidence, the ALJ provided an adequate reason to assign little weight to her opinion. As such, the ALJ's opinion is supported by substantial evidence and he did not err.

---

[14]Plaintiff also contends that the ALJ erred in rejecting the opinion of Nurse Mattea on the basis that Plaintiff's treatment at Suncoast was obtained "seemingly in an effort to generate evidence for this application and appeal." (Dkt. No. 20 at 17-18; Tr. 14.) Standing alone, such reason for rejecting Nurse Mattea's opinion would be insufficient. *See Hickel v. Comm'r of Soc. Sec.*, No. 13-11172, 2013 WL 5778956, at *5 (11th Cir. Oct. 28, 2013) ("[G]enerating evidence is the purpose of obtaining opinions from medical sources, whether paid for by the Commissioner or by the claimant."). But, as discussed previously, the ALJ also discounted the opinion of Nurse Mattea as inconsistent with the objective medical and other record evidence. (Tr. 14.); *see Johnson ex rel. J.H. v. Astrue*, No. 4:11-cv-03560-RDP, 2013 WL 754719, at *6 (N.D. Ala. Feb. 26, 2013) (finding an ALJ's decision supported by substantial evidence where plaintiff's motive to generate evidence for the current appeal was one of several factors considered by the ALJ in discounting a medical opinion). Therefore, the ALJ's evaluation of Nurse Mattea's opinion was not erroneous on this ground.

**IV.**

Accordingly, after due consideration and for the foregoing reasons, it is hereby RECOMMENDED:

1. The decision of the Commissioner be AFFIRMED.

2. The Clerk of Court be directed to enter final judgment in favor of the Commissioner and close the case.

IT IS SO REPORTED in Tampa, Florida, on this 3rd day of February, 2014.

_____
ANTHONY E. PORCELLI
United States Magistrate Judge

**NOTICE TO PARTIES**

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date it is served on the parties shall bar an aggrieved party from a de novo determination by the District Court of issues covered in the report, and shall bar the party from attacking on appeal factual findings in the report accepted or adopted on appeal by the District Court except upon grounds of plain error or manifest injustice. 28 U.S.C. § 636(b)(1)(c); Local Rule 6.02; *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc).

Copies furnished to:
Hon. James D. Whittemore
Counsel of Record